IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW BLACKBURN,
Individually and on behalf of
others similarly situated,

    Plaintiff,

vs.                                   CASE NO.: 8:10-CV-945-JDW-MAP

BRIGHT HOUSE NETWORKS, LLC,

    Defendant.
_____/

## PLAINTIFF'S MOTION TO CREATE A CONDITIONAL OPT-IN CLASS AND MOTION TO AUTHORIZE NOTICE TO PUTATIVE CLASS MEMBERS

Plaintiff, MATTHEW BLACKBURN, individually and on behalf of others similarly situated, pursuant to 29 U.S.C. § 216(b), move the Court to enter an order (1) permitting this case to proceed as a conditional opt-in collective action, (2) authorizing notice by first class mail to all similarly situated employees employed by BRIGHT HOUSE NETWORKS, LLC, at the Saint Petersburg, Florida location as Teleservice Employees, including Customer Service Representatives or positions with different titles but similar job duties and pay within the last three (3) years to inform such persons of their right to opt-in as additional party plaintiffs, and (3) ordering the Defendants to produce a computer readable data file containing names, addresses, and telephone numbers of the potential opt-in plaintiffs so that such notice may be implemented.

Plaintiff attaches as **Exhibit A** his proposed Fair Labor Standards Act Notice of Collective Action Lawsuit, which sets forth the definition of the proposed class. Further attached

1

as **Exhibit B** is Plaintiff's proposed Consent to Join Lawsuit as Party Plaintiff, which is to be sent via U.S. Mail with the Notice of Collective Action Lawsuit to putative class members.

## MEMORANDUM OF LAW

Plaintiff, individually and on behalf of others similarly situated, submits this memorandum of law in support of Plaintiff's Motion to Create a Conditional Opt-In Class and Motion to Authorize Notice to Putative Class Members under 29 U.S.C. § 216(b).

### I. PRELIMINARY STATEMENT

In this memorandum, Plaintiff, MATTHEW BLACKBURN, individually and on behalf of others similarly situated, will be referred to as either the "Plaintiff" or "Blackburn." The Defendant, BRIGHT HOUSE NETWORKS, LLC, will be referred to as "Bright House" or "Defendant."

### II. INTRODUCTION – COLLECTIVE ACTIONS UNDER 29 U.S.C. § 216(b)

The Plaintiff was employed by Bright House in the position of Customer Service Representative. In this action, the Plaintiff seeks recovery of unpaid overtime compensation, liquidated damages, prejudgment interest, payment of reasonable attorneys' fees and costs incurred in the prosecution of this claim, and equitable relief declaring and mandating the cessation of Defendants' unlawful pay policy and such other relief as the court may deem just and proper pursuant to the Fair Labor Standards Act (FLSA). In addition to his individual claims, the Plaintiff brought this action on behalf of other employees similarly situated, i.e., all teleservice employees employed by Defendant as Customer Service Representatives or positions with different titles but similar job duties and pay for the three (3) year period preceding the filing of this lawsuit. Section 216(b) of the FLSA specifically authorizes such collective actions. 29 U.S.C. § 216(b).

It is well established that a district court has the authority to facilitate notice to other potential plaintiffs informing them of their ability to opt-in under § 216(b). *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989); *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Mackenzie v. Kindred Hospitals East, LLC*, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003). A number of benefits emerge from the court's facilitation of notice. First, permitting notice generally serves the "broad remedial purpose of the [FLSA]." *Dybach*, 942 F.2d at 1567. Second, a collective action gives plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffman-LaRoche*, 493 U.S. at 170. Third, judicial economy is accomplished because "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Rodgers v. CVS Pharmacy, Inc.*, 2006 WL 752831 *2 (M.D. Fla. Mar. 23, 2006) (quoting *Hoffman-LaRoche*, 493 U.S. at 170). Fourth, early participation by the district court protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, and expedites resolution of the dispute. *Garner v. G.D. Searle Pharmacy & Co.*, 802 F.Supp. 418, 422 (M.D. Ala 1991) (citing *Hoffman-LaRoche*, 493 U.S. 171). Finally, early notice serves the critical function of advising potential claimants to file their consents pursuant to Section 216(b) before the running of the applicable FLSA statute of limitations, which may be two years or, in the event of a willful violation, three years. *Knight v. Columbus, Ga.*, 19 F.3d 579, 581 (11th Cir. 1994), *cert. denied*, 513 U.S. 929 (1994).

The benefits articulated above are predicated upon "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. However, the court

is given discretion in determining whether there are "appropriate conditions" to implement Section 216(b) by facilitating notice. *Mackenzie*, 276 F.Supp.2d at 1220 (citing *Dybach*, 942 F.2d at 1567). Specifically, the court should "satisfy itself" that there are other employees who may desire to opt-in and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions." 942 F.2d at 1567-68.

The United States District Court for the Middle District of Florida has commonly utilized the two-tiered approach for certifying opt-in classes under Section 216(b), which was originally suggested by the Eleventh Circuit Court of Appeals. Under the two-tiered approach:

> The first determination is made at the so called 'notice stage.' At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a <u>fairly lenient standard</u>, and <u>typically results in 'conditional certification' of a representative class</u>. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Rodgers*, 2006 WL 752831 at *2 (quoting *Hipp v. Nat'l Life Ins. Co.*, 252 F.2d 1208, 1218 (11th Cir. 2001)) (emphasis added). Consistent with this authority and the reasons expressed herein, Plaintiff respectfully requests that the Court authorize this case to conditionally proceed as a collective action, order the requested identification of the potential opt-in plaintiffs, and authorize the issuance of Plaintiffs' proposed notice (**Exhibit A**) and consent form (**Exhibit B**) to be mailed to all teleservice employees, including Customer Service Representatives or other employees with different job titles but the same or similar job duties, employed by Defendant

within the last three (3) years. Furthermore, Plaintiff respectfully requests that the Court makes a prompt determination in order to protect potential opt-in plaintiffs from being harmed by the currently running statute of limitations under FLSA.

## III. STATEMENT OF THE CASE

Plaintiff initiated this action on April 21, 2010, with the filing of the original Complaint, which sought damages for themselves and others similarly situated for violation of the Fair Labor Standards Act (FLSA). (Doc. 1). The named Plaintiff in the Complaint was a teleservice employee, specifically a Customer Service Representative, during the requisite statutory period. Defendant petitioned this Court for additional time to respond to Plaintiff's Complaint on May 25, 2010, which this Court granted. Defendants filed its Answer to Plaintiffs' Complaint on June 1, 2010. Plaintiff now respectfully files his Motion to Create a Conditional Opt-In Class and Motion to Authorize Notice to Putative Class Members.

### A.  Bright House and Its Call Center Operations

The Defendant is one of Florida's premier providers of cable television, home telephone, and internet service.[1] With regard to Defendant's call center operations, the website is not fully instructive. However, the combination of job postings and sworn affidavits from Plaintiff and Opt-in Plaintiffs assists in understanding the scale of Defendant's call center operations. Plaintiff and Opt-in Plaintiffs worked at Defendant's call center at 700 Carillon Parkway in Saint Petersburg, Florida, where Bright House employs approximately 800 teleservice employees. (Blackburn Aff. ¶ 2; Brooks Aff. ¶ 2; Butterfield Aff. ¶ 2; Marks Aff. ¶ 2 & 13). Of the 800 or so teleservice employees at the Saint Petersburg call center, Bright House employs approximately 200 to 300 Customer Service Representatives, which is the position held by the

---

[1] See Defendant's website, **http://brighthouse.com**.

Plaintiff and Opt-in Plaintiffs. (Blackburn Aff. ¶ 2; Brooks Aff. ¶ 2; Butterfield Aff. ¶ 2; Marks Aff. ¶ 2). Plaintiff and Opt-In Plaintiffs have knowledge of Customer Service Representatives, similar to themselves, that work at the Saint Petersburg call center. (Blackburn Aff. ¶ 10; Brooks Aff. ¶ 10; Butterfield Aff. ¶ 10; Marks Aff. ¶ 12).

### B.   The Customer Service Representative Job at Bright House

Customer Service Representatives (CSRs) are hourly employees and therefore hold a non-exempt status under the FLSA. Instructive information regarding the duties of CSRs was found in a job description located on Defendant's website, which states that CSRs handle customer inquiries, concerns and complaints, such as billing questions, troubleshooting problems, scheduling service calls, making sales, and various other duties involving customer needs. **(Exhibit C)**. Also, CSRs are required to handle customer requests for new service, upgrading service, transferring service, and disconnecting service, for which CSRs must maintain accurate and precise computer entries. *Id. See also* Blackburn Aff. ¶ 3; Brooks Aff. ¶ 3; Butterfield Aff. ¶ 3; Marks Aff. ¶ 3 (noting their duties as CSRs).

### C.   Defendant's Pay Practices as Applied to Customer Service Representatives

All Customer Service Representatives are required to be ready to take their first call at the moment their shift begins. (Blackburn Aff. ¶ 6&7; Brooks Aff. ¶ 6; Butterfield Aff. ¶ 6; Marks Aff. ¶ 6&7). If CSRs are not available to take a call at the moment their shift begins, then they are subject to reprimand. Indeed, CSRs are expected to keep a ninety-five percent (95%) adherence, meaning that they have to either be on the phones or available to take a call at least ninety-five percent (95%) of the time in which they are scheduled to work. (Blackburn Aff. ¶ 5; Brooks Aff. ¶ 5; Butterfield Aff. ¶ 5; Marks Aff. ¶ 5). In order to be available to take their first call at the beginning of their shift, CSRs must arrive at Bright House anywhere between ten (10)

and twenty-five (25) minutes early; on days that the computer system had been updated, CSRs would have to arrive as much as thirty (30) minutes early. (Blackburn Aff. ¶ 6&7; Brooks Aff. ¶ 6; Butterfield Aff. ¶ 6; Marks Aff. ¶ 6&7). Prior to the beginning of their shift, CSRs are/were required to: (1) have their computers up and running; (2) be logged into the system; (3) have their emails read; (4) have their computer programs open; and (5) be ready to immediately take a call. *Id.* Plaintiff and Opt-In Plaintiffs were not compensated for these preliminary work activities; rather, these CSRs only began getting paid when their scheduled shifts began. *Id.*

Bright House's Customer Service Representatives also perform uncompensated work at the end of their work day as well. (Blackburn Aff. ¶ 8-9; Brooks Aff. ¶ 7-8; Butterfield Aff. ¶ 7-8; Marks Aff. ¶ 8-9). Bright House adheres to a rounding policy at the end of Plaintiff's and Opt-in Plaintiffs shifts. The rounding policy is clear and unambiguous: if a Customer Service Representative is on a call that goes beyond the end time of their shift, then the CSR is only compensated if the call goes beyond at least eight (8) minutes past the end of their shift. *Id.* In that scenario, the CSR receives compensation for fifteen (15) minutes of work. *Id.* If the call lasts seven (7) minutes or fewer, then the CSR is not compensated for the work performed. *Id.* Testimony from the Plaintiff and Opt-In Plaintiffs indicates that it is more likely that the calls would last fewer than seven (7) minutes given Bright House's directive that CSRs keep their call time under seven (7) minutes. (Blackburn Aff. ¶ 8; Brooks Aff. ¶ 8; Butterfield Aff. ¶ 8; Marks Aff. ¶ 10).

All of this uncompensated work made it impossible for Plaintiffs to complete their work in a forty (40) hour work week. Indeed, Plaintiff and Opt-In Plaintiffs often worked between forty-one (41) and forty-three (43) hours per week. (Blackburn Aff. ¶ 9; Brooks Aff. ¶ 9; Butterfield Aff. ¶ 9; Marks Aff. ¶ 11). (Docs. 26, 27, 28, 29, 56, 57, 58). Broken down on a

daily basis, Plaintiff and Opt-In Plaintiffs worked approximately fifteen (15) to forty (40) off-the-clock minutes per workday, but were not compensated for that work time. *Id.* Plaintiffs were not compensated at the rate of one and one-half times their regular rate for hours worked for Bright House in excess of forty (40) hours per week.[2] Under the FLSA, the obligation to pay an employee overtime compensation begins after a non-exempt employee works an excess of forty (40) hours in one work week. 29 U.S.C. §§ 207(a)(1), 213(a)(1); 29 C.F.R. § 778.101.

## IV. ARGUMENT

At the notice stage, the Court will initially determine whether: "1) there are other employees who desire to opt-in to the action; and 2) the employees who desire to opt-in are similarly situated." *Rodgers*, 2006 WL 752831 at *2 (quoting *Dybach*, 942 F.2d at 1567-68). The similarly situated requirement of § 216(b) is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996). At the notice stage, only minimal evidence has been submitted, and the Court's decision is usually based only on the pleadings and affidavits. *Barten v. KTK & Associates, Inc.*, 2007 WL 2176203 *1 (M.D. Fla. 2007) (citing *Hipp*, 252 F.3d at 1218, and *Cameron-Grant*, 347 F.3d 1240, 1243 (11th Cir. 2003)). For this reason, the Court's determination is made "using a fairly lenient standard" and typically results in conditional class certification. *Id.* (quoting *Cameron-Grant*, 347 F.3d at 1243 n.2). In the end, the Court "must satisfy itself that there are other employees who are similarly situated and who desire to opt-in." *Rodgers*, 2006 WL 752831 at *2. Significantly, the notice motion is not a ruling on the merits of the plaintiffs' claim. *Grayson*, 79 F.3d at 1099. In addition, there is "a fundamental,

---

[2] The overtime claims of the full-time CSRs herein are governed by a uniform statutory scheme under the FLSA and the Department of Labor's implementing regulations. The Department's regulations related to wage and hour administration may be found at 29 C.F.R. §§ 500 – 899, and are generally followed by court in matters involving FLSA claims. *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

irreconcilable difference between the class action described by Rule 23 and that provided for by [the] FLSA." *Butler-Jones v. Sterling Casino Lines, L.P.*, 2008 WL 5274384 (M.D. Fla. December 18, 2008) quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975).

### A. Other Employees Desire to Opt-In

At this stage of a collective action, all that plaintiffs need to demonstrate is a "reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they proposed." *Id.* at *3 (quoting *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983); see also *Dybach*, 942 F.2d at 1567-68. The plaintiffs' "unsupported beliefs and expectations that others may desire to opt-in" are insufficient to justify an issuance of notice to the potential class. *Id.* at *4. However, the "reasonable basis" standard is not a heavy burden. A plaintiff can meet the burden of establishing class-wide discrimination "by making detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Grayson*, 79 F.3d at 1097 (quoting *Sperling v. Hoffman-LaRoche*, 118 F.R.D. 392, 406-07 (D. N.J. 1988)). For example, the United States District Court for the Middle District of Florida authorized a collective action on the evidence provided by one named plaintiff and two consents to join by former employees. *Tucker v. Labor Leasing, Inc.*, 872 F.Sup. 941, 943 (M.D. Fla. 1994), see also *Sanchez v. Ocwen Loan Servicing, LLC*, Slip Copy 2007 WL 809666 *2 (M.D. Fla. 2007) (noting that "[e]ven a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation"); *Tyler v. Payless Shoe Source, Inc.*, 2005 WL 3133763, *3 (M.D. Ala. Nov. 23, 2005) (holding that three to five consents to join were sufficient to establish that others desired to opt-in).

Since the filing of the Complaint, three (3) former Bright House Customer Service Representatives have filed consents to join the pending lawsuit. (Dkt. 5, 6, 7). Moreover, in the attached Affidavits of Plaintiff and Opt-In Plaintiffs, each CSR declares that they have knowledge, through conversations or otherwise, that similarly situated CSRs have a desire to join the pending litigation.

### B. Plaintiffs Are Similarly Situated to Potential Opt-In Plaintiffs

Plaintiffs must show that they are similarly situated to the putative opt-in plaintiffs "with respect to their job requirements and with regard to their pay provisions." *Epps v. Oak Street Mortgage LLC*, 2006 WL 1460273, *3 (M.D. Fla. May 22, 2006) (quoting *Dybach*, 942 F.2d at 1567-68). Plaintiffs "need show only that their positions are <u>similar, not identical</u>, to the positions held by the putative class members." *Id.* (quoting *Hipp*, 252 F.3d at 1217) (emphasis added). Further, plaintiffs need only demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *Grayson*, 79 F.3d at 1097. Thus, the similarly situated standard is "not a stringent one." *Rodgers*, 2006 WL 752831 at *5.

    1.    <u>There is a Reasonable Basis To Believe That There Are Others Similarly Situated With Regard to Job Requirements</u>

This motion asks the Court to include within the opt-in class only those individuals who are or were employed by Defendant as teleservice employees, including Customer Service Representatives or other similarly situated employees with different job titles but the same or similar job duties employed by Bright House within the last three (3) years. Plaintiff's motion for conditional class certification should be granted, because all CSRs are similarly situated with regard to their job requirements. Customer Service Representatives spend approximately ninety-five (95%) of their day on the phone, with the primary focus of taking in-bound calls from Bright House's customers. During these phone calls, CSRs handle customer inquiries, concerns and

complaints, including billing needs, troubleshooting customer problems, scheduling service calls, making sales, upgrades, disconnecting of services, and various other customer requests or needs. (**Exhibit C**; Blackburn Aff. ¶ 3; Brooks Aff. ¶ 3; Butterfield Aff. ¶ 3; Marks Aff. ¶ 3). Thus, Plaintiffs' motion for conditional certification should be granted because Plaintiffs have proven that their job requirements are sufficiently similar to the members of their proposed class.

    2.    <u>There Is a Reasonable Basis To Believe That There Are Others Similarly Situated with Regard To Their Pay Provisions</u>

This is an off-the-clock case related to Customer Service Representatives working for Bright House during the statutory period. The Plaintiff, Opt-Ins and putative class members share not just similar, but the same pay issues: (1) CSRs perform uncompensated preliminary work prior to the beginning of the shift, starting from the moment they sit down at their desk until the moment they take their first phone call; and (2) CSRs are negatively impacted by Bright House's "rounding" policy at the end of their shifts. In addition, all Customer Service Representatives are paid in a similar fashion. They are hourly employees who are only compensated during their regularly scheduled shifts when they are taking calls or available to accept in-bound calls. Thus, Plaintiff and Opt-In Plaintiffs have consistently alleged that, due to the off-the-clock work they engaged in, they worked between forty-one (41) and forty-three (43) hours per week, but were not paid at a rate of time and one-half their regular rate of pay.

**C.    The Scope of the Proposed Collective Action Should Be Broad**

<u>At a minimum, Plaintiff's class should be conditionally certified to include employees either currently or formerly employed as Customer Service Representatives, or similar positions, at the Saint Petersburg, Florida location during the statutory period.</u> However, Plaintiff asserts that all teleservice representatives were required to perform the same pre-shift and post-shift duties, and they also were not compensated. Therefore, Plaintiff seeks to include all teleservice

employees, including Customer Service Representatives, currently or formerly employed at the Saint Petersburg, Florida location during the statutory period. Should the Court determine it to be more appropriate to include only CSRs, then Plaintiff, alternatively, respectfully requests that notice be sent to similarly situated CSRs employed during the statutory period.

### D.  The Notice of Lawsuit and Consent Form Should be Flexible

To join this case, the FLSA simply requires that similarly situated employees file a written consent to participate as additional party plaintiffs in the court in which the action is brought. 29 U.S.C. § 216(b). There are no other specific requirements concerning the notice. The Middle District of Florida noted that the only real requirement is that it must "clearly express the individual's consent to become a party to the action." *Neizil v. Williams*, Not Reported in F.Supp., 1983 WL 1983, *3 (M.D. Fla. Jan. 12, 1983). Recently, the Middle District of Florida, Tampa Division approved the notice provision set forth in a similar FLSA collective action.[3] See *Matthew Markut, et. Al., v. Angelo's Aggregate Materials, LLC d/b/a Angelo's Recycled Materials, Angelo Iafrate, Sr., individually and Tony Ansaldo, individually*, Case No.: 8:08-cv-00204-T-26TGW. The attached Notice of Collective Action Lawsuit to potential class members emulates the notice provision set forth in *Markut* and *Sanchez*, and therefore satisfies the lenient requirements set forth in Section 216(b).

---

[3] In April 2007, the Middle District of Florida approved a Notice similar to the one attached by Plaintiffs. See *Garrison v. Chuck, Carol & Company, Inc.*, Slip Copy 2007 WL 1106128 (M.D. Fla. 2007). Also, in March 2007, the Middle District of Florida commented on the type of language that is appropriate in an opt-in notice. See *Sanchez*, Slip Copy 2007 WL 809666 at *4-6.

## V. RECENT FLSA COLLECTIVE ACTION CALL CENTER CASES

Recently, courts across the country have recognized the appropriateness of notice-stage certification in similar call center cases.[4] In fact, earlier this year, a sister district court analyzed an FLSA motion for conditional certification in an off-the-clock call center case. In *Sharpe v. APAC Customer Services, Inc.*, the court granted the plaintiff's motion because the plaintiff "made a modest factual showing that defendant had a company-wide policy or practice that encouraged or permitted certain customer service representatives to work overtime without pay." 2010 WL 135168 (W.D. Wis. Jan. 11, 2010). The customer service representatives in *Sharpe* took inbound calls from customers and also made outbound calls. *Id.* at *1. The defendant operated nine (9) different call centers throughout the United States; however the plaintiffs and opt-ins worked at the La Crosse, Wisconsin location.[5] *Id.* at *1-2. Similar to Plaintiff's case, the *Sharpe* plaintiffs had to perform several tasks before answering calls, including: "(1) booting up their computers; (2) logging onto defendant's network; (3) opening relevant computer programs; (4) reviewing company notices and training notes on SharePoint, defendant's intranet; (5)

---

[4] See *Gipson v. Southwestern Bell Telephone Co.*, 2009 WL 1044941 (D. Kan. Apr. 20, 2009) (granting motion for conditional certification for call center telephone representatives who were primarily responsible for taking incoming calls from customers. The plaintiff was required to be ready to begin taking customer calls at the beginning of his shift to avoid being out of schedule adherence or deemed tardy. In order to do this, Plaintiff arrived at least ten (10) minutes early to engage in tasks such as booting up his computer, logging into the defendant's network and opening computer programs that are used during calls. The court noted that "[v]ariations among actual job title or some responsibilities does not preclude notice stage certification where all employees share general duties and the defendant denies overtime pay to all."); *Burch v. Qwest Communications International, Inc.*, 500 F.Supp.2d 1181 (D. Minn. 2007) (granting motion for conditional certification for call center employees who were required to answer inbound calls from the defendant's customer and had to log onto the computer system and open several software applications in order to be prepared to answer calls); *Shabazz v. Asurion Insurance Service*, 2008 WL 1730318 (M.D. Tenn. Apr. 10, 2008) (granting motion for conditional certification for call center employees who reported to the defendant's facility fifteen (15) to twenty (20) minutes early each day in order to turn on and boot their computers, start and log onto various computer programs, but were not paid for the preliminary work activities. Similarly, the plaintiffs were not compensated for post-shift work activities when they had to log off of the computer applications and other programs utilized while performing their job duties).

[5] There was another opt-in who worked from home, but was supervised by the Green Bay, Wisconsin call center. *Id.* at *2.

completing or correcting 'customer credits' and other orders; and (6) completing other essential administrative tasks." *Id.* at *4. The court noted that the plaintiffs performed many of the aforementioned tasks before their shifts began, during their designated lunch breaks, or after their shifts were completed. *Id.* In permitting nationwide notice-stage certification[6], the court noted that "[a]t this stage, plaintiff need demonstrate only that there is some factual nexus that connects her to other potential plaintiffs as victims of an unlawful practice." *Id.* at *7. The court ultimately noted that "Defendant's further arguments regarding similar situation, individual issues and manageability of a nationwide class will become relevant at the second stage . . . [a]t the close of discovery, defendant may move to decertify the class. . ." *Id.*

In *Bishop v. AT & T Corp.*, the court granted the plaintiffs' FLSA motion for conditional certification. 256 F.R.D. 503, 509 (W.D. Pa. 2009). The plaintiffs were customer service representatives at a call center, fielding incoming calls from customers regarding service, equipment and billing issues. *Id.* at 505. In *Bishop*, the plaintiffs alleged that they were required to perform work before and after their regularly scheduled tours and during their meal and rest breaks, but were only paid for the time they were logged into the defendant's phone system. *Id.* Similar to Plaintiff's claims, AT & T expected the *Bishop* plaintiffs to be ready to accept customer calls—or, "caller ready"—at the beginning of each tour or shift.[7] *Id.* at 505, 508. Strikingly, the *Bishop* plaintiffs alleged that, prior to their shifts beginning, they had to log onto

---

[6] In discussing the rationale behind permitting nationwide certification, the court noted that "[a]dducing evidence from a small percentage of the potential class does not preclude conditional certification of a class under the FLSA. A representative plaintiff is not required to come up with evidence of hundreds of particular overtime violations to make the requisite factual showing. . . [w]here an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations." *Id.* at 6, citing and quoting *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629, 631 (W.D. Wis. 2009).

[7] The court recognized the "contradictory interplay between AT & T's expectation of readiness at the start of the employees' tour and when AT & T begins to calculate the hours worked by those employees." *Id.* at 507.

and open several computer software applications in order to properly and adequately serve their customers and were not paid for the time it took to accomplish those tasks. *Id.* Furthermore, the plaintiffs claimed that they would not be compensated when they received a call at the end of their tour, unless the call exceeded eight (8) minutes. *Id.* The employees also alleged that time attributed to logging off the clock was not compensated. *Id.* Analogously, Plaintiff's motion for conditional certification should be granted.

In *Fisher v. Michigan Bell Telephone Co.*, the court granted the plaintiffs' FLSA motion for conditional certification. 2009 WL 3427048 (E.D. Mich. Oct. 22, 2009). The plaintiffs were employed in customer service, sales, and similar positions and alleged that they were not paid for some or all of their pre-shift, lunch break, and post-shift work activities. *Id.* Specifically, the plaintiffs were required to arrive early to log into the computer systems and load several software applications so they would be able to take calls promptly at the beginning of their shifts, which took approximately ten (10) to fifteen (15) minutes. *Id.* at *2. Additionally, pursuant to the defendant's "rounding" policy, if a call extended more than seven (7) minutes past the end of a plaintiff's tour, then a plaintiff would be paid for fifteen (15) minutes. However, if the call failed to extend past that time, then a plaintiff would receive no compensation for the time worked. *Id.* at *3. The plaintiffs also alleged that, after their scheduled tour ended, they were required to log off of the phone and computer systems, but were not compensated for that time. *Id.* Ultimately, the plaintiffs alleged that they performed between fifteen (15) and sixty (60) minutes of unpaid work per day. *Id.*

In *Fisher*, the court noted some of the ways in which the plaintiffs were similarly situated: (1) regardless of the plaintiffs' titles or locations, they performed the same job duties, namely taking incoming calls from customers; (2) Plaintiffs were subjected to the same policies

and practices of the defendant, for example, schedule adherence; and (3) if the plaintiffs were not prepared to take calls at the beginning of their shifts, they could be subjected to discipline. *Id.* at *2. Moreover, the court noted some of the ways in which the plaintiffs showed that they were similarly situated victims of a common policy or plan of the defendant that violated the FLSA: (1) they were paid in the same manner; (2) they were required to be ready and available to take a call at the beginning of their tour, which necessitated logging onto the computer systems prior to the start of their tour; (3) the defendant's adherence and call handle time requirements; and (4) the defendant's rounding policy that "systematically disadvantaged" the plaintiffs. *Id.* at *6. Finally, in responding to the defendant's argument that the plaintiffs were not similarly situated because they worked in different facilities and business units, under different supervisors and had different job duties, the court reiterated that a "plaintiff must show only that his position is similar, not identical, to the positions held by the putative class members." *Id.* at *6-7 (emphasis added). The facts in this case are eerily similar to the facts in *Fisher*. Just as the *Fisher* court found appropriate conditions to conditionally certify a notice-stage class, so should this honorable Court.

Clearly, these courts satisfied themselves that there were appropriate conditions for notice-state certification. Given the overwhelming similarities in these off-the-clock cases, it would be more than suitable for this Court to permit notice to putative class members. Other Customer Service Representatives should be given notice and the opportunity to opt-in if they so choose. If, following discovery, this Court believes decertification to be appropriate, then any CSRs who are/were not similarly situated may be dismissed without prejudice.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order (1) permitting this case to proceed as a conditional opt-in class as defined in the Notice of Collective Action Lawsuit, (2) authorizing Plaintiff's proposed Notice and Consent to Join be sent by first class mail to all employed by Defendant as teleservice employees, including Customer Service Representatives or positions with different titles but similar job duties and pay within the last three (3) years to inform such persons of their right to opt-in as additional party plaintiffs,[8] and (3) ordering Defendant to produce within thirty (30) days of said Order, a computer readable data file containing the names, addresses, and telephone numbers of the potential opt-in plaintiffs so that such notice may be implemented. Furthermore, the Plaintiff respectfully requests that the Court makes a prompt determination in order to protect potential opt-in plaintiffs from being harmed by the currently running statute of limitations under the FLSA.

[ THIS SPACE INTENTIONALLY LEFT BLANK ]

---

[8] Should the Court determine it to be more appropriate to include only CSRs, then Plaintiff, alternatively, respectfully requests that notice be sent to similarly situated CSRs employed during the statutory period.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on June 2, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Benjamin D. Sharkey, Esquire and B. Tyler White, Esquire, JACKSON LEWIS, LLP, 245 Riverside Avenue, Suite 450, Jacksonville, FL 32202.

                                                   FLORIN, ROEBIG, P.A.

                                                   /s/Wolfgang M. Florin
                                                 Wolfgang M. Florin
                                                 Florida Bar No. 907804
                                                 Gregory A. Owens
                                                 Florida Bar No. 0051366
                                                 FLORIN ROEBIG, P.A.
                                                 777 Alderman Road
                                                 Palm Harbor, Florida 34683
                                                 (727) 786-5000
                                                 (727) 772-9833 Facsimile
                                                 wmf@florinroebig.com
                                                 greg@florinroebig.com